*In re* ESTATE OF JOHN D. PLEPEL, Deceased—(Estate of John D. Plepel, Appellant and Cross-Appellee, *v.* Industrial Metals, Inc., *et al.*, Appellees and Cross-Appellants).

First District (2nd Division)   No. 82—1633

Opinion filed June 14, 1983.

Jares and Komosa, of Chicago (Joseph J. Jares, Jr., of counsel), for appellant.

Elmore, Gowen & DeMichael and Georges & Herdrich, both of Chicago (James Georges, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

The estate of decedent John D. Plepel appeals from the order of the trial court allowing the claims of Industrial Metals, Inc. (Industrial), and United Metals, Inc. (United), contending that the debts claimed by these claimants were corporate debts of Advance Metal Moulding Company (Advance), of which decedent was the majority stockholder and president. The claims of both claimants were based on the balances due on open accounts maintained with claimants by Advance. The debts were incurred during a period when Advance had been involuntarily dissolved for failure to pay franchise taxes and file an annual report. The estate contends that the subsequent reinstatement of Advance as a corporation "relates back" to the time that it was involuntarily dissolved, and that therefore the estate is not liable for debts incurred by decedent on behalf of the corporation when the corporation was not in existence. Claimants each cross-appeal, contending that the trial court erred in denying them prejudgment interest on their claims.

The facts of this case are simply stated. John D. Plepel was the president and chief stockholder of Advance Metal Moulding Company, a closely held corporation engaged in the fabrication of metal mouldings from rolled steel. On December 1, 1978, Advance was dissolved by the Secretary of State for failure to pay franchise taxes and failure

to file an annual report. (See Ill. Rev. Stat. 1981, ch. 32, par. 157.82(a).) After the dissolution of the corporation, Advance continued to conduct business.

Claimants Industrial and United made sales of various quantities of steel to Advance pursuant to oral orders placed with them by Advance. Industrial and United carried Advance on their books as an open account, and Advance was periodically billed by both companies for the outstanding balance on the accounts plus interest. These bills and invoices were paid by company checks signed by John Plepel. The signatures on the checks contained Plepel's name only, and did not indicate that he was signing in any corporate capacity.

John Plepel died on February 22, 1981. At the time of his death, Advance owed United $15,546.32 and Industrial $15,583.34 for steel which had been delivered. United and Industrial filed claims against the decedent's estate on June 2, 1981.

On June 9, 1981, Advance was reinstated as a corporation by the Secretary of State. On June 18, 1981, the reinstated corporation filed a petition for bankruptcy in the Federal District Court. The presidents of United and Industrial sat on the unsecured creditor's committee in those proceedings. Industrial received $2,337.50 and United received $2,331.95.

In the probate proceedings, claimants contended that John Plepel was personally liable for the amounts due on the open accounts because of the operation of section 150 of the Business Corporation Act (Ill. Rev. Stat. 1981, ch. 32, par. 157.150), which provides:

> "All persons who assume to exercise corporate powers without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

After hearing evidence relating to the amount unpaid on the accounts and the course of business between Advance and claimants, the trial court entered judgment for Industrial in the amount of $11,249.57 and for United in the amount of $13,214.38. Those amounts reflect the full original balances presented by claimants less the amounts they received in the bankruptcy court. The court refused to allow prejudgment interest on these amounts, although the invoices sent to Advance during the decedent's life reflect charges for interest on amounts due, and those charges were paid with checks signed by the decedent without protest.

On appeal, the estate contends that the reinstatement of Advance "relates back" to the time of its dissolution as a corporation, and that therefore decedent has no personal liability for debts incurred during the period of dissolution. Industrial and United each cross-appeal, con-

tending that the trial court erred in denying them prejudgment interest on the amounts of the open accounts.

■ The precise issue of whether the officer of a corporation which has been involuntarily dissolved, and which is later reinstated, is personally liable for debts incurred by the business during the period of dissolution is a question of first impression in Illinois. It can not be doubted that an officer of a dissolved corporation is without authority to exercise corporate powers, and that if Advance had not been reinstated, section 150 would operate to impose personal liability on all those who had incurred debts on behalf of the former corporation after it had been dissolved. The question, then, is whether the reinstatement of the corporation somehow "relates back" to the time that the corporation was dissolved so as to cure the lack of authority to exercise corporate powers which existed at the time that the debts were incurred. The predecessor statutes to section 150 provided that any persons assuming to act for a corporation before all stock named in the articles was subscribed (1871-72 Ill. Laws 296) or before the corporation was authorized to do business (1919 Ill. Laws 312, 315) were jointly and severally liable for any debts incurred by them prior to the corporation coming into existence. (See *M. H. Vestal Co. v. Robertson* (1917), 277 Ill. 425, 427-28, 115 N.E. 629.) Under those prior statutes, as well as under section 150, the courts look to the intent of the parties to a preincorporation contract in determining whether the incorporator or promoter, as well as the corporation, is liable on the contract. (See *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 472-73, 322 N.E.2d 45.) Section 150 differs from its predecessors in that, by its terms, its application is not limited to debts and liabilities incurred prior to incorporation, but is applicable to debts incurred by "[a]ll persons who assume to exercise corporate powers without authority." It therefore follows that personal liability may be imposed on an officer of a dissolved corporation who enters into contracts on behalf of the corporation after dissolution. See, *e.g., Kessler Distributing Co. v. Neill* (Iowa App. 1982), 317 N.W.2d 519, 521 (interpreting Iowa Code Annot. sec. 496A.141, which is substantively identical to Ill. Rev. Stat. 1981, ch. 32, par. 157.150).

The courts of other jurisdictions have imposed personal liability upon officers of dissolved corporations who incurred debts after dissolution despite the fact that the corporation was later reinstated. (See *Kessler Distributing Co. v. Neill* (Iowa App. 1982), 317 N.W.2d 519, 522; *Poritzky v. Wachtel* (1941), 176 Misc. 633, 634-35, 27 N.Y.S.2d 316, 317-18.) In *Poritzky,* the court noted that if the reinstatement of the corporation were held to "relate back" so as to nullify the per-

sonal liability of the person who incurred the debts, a former officer of a dissolved corporation could obtain credit, and subsequently shift his personal liability to the corporation simply by paying the arrearage in franchise tax. (176 Misc. 633, 635, 27 N.Y.S.2d 316, 318.) We agree that such a result is against public policy because it would create a mechanism by which just debts could be easily evaded. We hold that the reinstatement of a dissolved corporation does not "relate back" to the time of dissolution so as to absolve the officers of personal liability for debts incurred by them during the period of dissolution.

The estate cites *Kaybill Corp. v. Cherne* (1974), 24 Ill. App. 3d 309, 320 N.E.2d 598, and *Amman Food & Liquor, Inc. v. Heritage Insurance Co.* (1978), 65 Ill. App. 3d 140, 382 N.E.2d 562, for the proposition that the reinstatement of a corporation "relates back" to the time of dissolution as a matter of Illinois law. Those cases are inapposite, however, standing as they do for only the narrow proposition that a suit brought by a plaintiff dissolved corporation need not be dismissed for lack of corporate capacity to sue so long as the corporation is reinstated during the limitations period for its cause of action. Those cases do not speak to the effect of reinstatement on personal liabilities which are incurred during the period of dissolution, and therefore they have no application to the instant case.

■ Our holding that section 150 authorizes the imposition of personal liability does not fully resolve the question of whether such liability was properly imposed in the instant case. Decedent here stands in a position similar to that of a preincorporation promoter who enters into contracts on behalf of a corporation not yet in existence. Under our supreme court's holding in *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 322 N.E.2d 45, personal liability will not be imposed on a person incurring debts prior to the corporate existence unless the parties intended that the individual should be bound by the contract. (59 Ill. 2d 465, 472-73.) In the instant case, he trial court allowed no testimony concerning any conversations with or representations made by decedent because of the inadmissibility of such conversations under the Dead Man's Act. (Ill. Rev. Stat. 1981, ch. 110, par. 8—201.) Therefore, there is little evidence in the record that speaks directly to the intent of the parties. However, the record is also devoid of evidence that claimants were in any way aware that they were dealing with a business which purported to be a corporation. All checks in payment of claimant's invoices were signed by decedent without the use of any corporate title; no evidence of any communication to claimants that would have indicated the corporate status of

Advance was introduced at trial; and the name of the business, Advance Metal Moulding Company, carried no *indicia* of corporateness. (*Cf. American Insurance Co. v. McClelland* (1913), 184 Ill. App. 381, 385 (mere use of the term "company" in business name is not sufficient to indicate corporate status).) Additionally, we interpret the fact that claimants filed claims in the decedent's probate estate for the amounts due while the business was still in operation and before the corporate reinstatement as a strong indication that claimants looked solely to decedent for payment of the debts. Insofar as there is nothing in the record to indicate that claimants were ever apprised that they were dealing with a business that purported to be a corporation, or that the parties ever intended anything but that claimants should look to decedent for payment of the debts, we hold that the decedent's estate is liable for the amounts due to claimants.

We note that because of the operation of the Dead Man's Act (Ill. Rev. Stat. 1981, ch. 110, par. 8—201), the decedent's dealings with claimants could be established only indirectly. The testimony of Industrial's president established that the decedent had acted as purchasing agent for Advance throughout their business relationship. A salesman for United testified to completing order forms which were received into evidence and which indicated that some of the orders for steel which comprised the account due to United originated from the decedent, and that other orders were placed by other persons acting on Advance's behalf. In this connection, it must be stressed that although the evidence indicates that the decedent was not the only person incurring debts on behalf of Advance during the period of dissolution, the liability imposed by section 150 is joint and several. Therefore the judgment against the estate for all sums due on the open accounts of claimants is proper, and the remedy of the estate for the payment of debts not incurred directly by the decedent. is an action for contribution from those other persons who also incurred debts on behalf of Advance.

■ Claimants contend on cross-appeal that the trial court erred in refusing to allow prejudgment interest on their claims. It is undisputed that the invoices sent to Advance provided that interest would accrue on the sums due (at a rate of $1\frac{1}{2}$% per month for United and $16\frac{1}{2}$% per year for Industrial) and that decedent signed checks in payment of invoices containing the same charges without protest. Claimants contend that these facts indicate that the interest terms were part of their contracts with decedent, while the estate contends that there is no evidence that decedent ever "acquiesced" to those terms. Insofar as decedent had continuously paid interest on the bal-

ance due of his accounts with claimants during their business relationships until his death, we hold that the interest terms were part of the contracts between the parties. Therefore, that portion of the judgment of the trial court which disallowed interest on United's and Industrial's claims is reversed and the cause remanded for determination of the interest due claimants.

The judgment of the circuit court is affirmed in part, reversed in part, and remanded with directions to proceed in conformity with the views expressed herein.

DOWNING, P.J., and HARTMAN, J., concur.