WILLIAM W. SWEASY *et al.*, Plaintiffs-Appellees, v. RICHARD SNYDER *et al.*, Defendants-Appellants.

Third District   No. 3—89—0109

Opinion filed December 6, 1989.—Modified on denial of rehearing January 30, 1990.

Floyd C. Dailey, of Harvey & Stuckel, Chartered, of Peoria (R. Wayne Harvey, of counsel), for appellants.

William W. Sweasy, of Peoria, appellee *pro se.*

JUSTICE BARRY delivered the opinion of the court:

This is a landlord-tenant dispute. Plaintiffs William W. and Sherrie L. Sweasy are the owners and lessors of residential property located at 2701 South Cameron Lane in Bartonville, Illinois. Defendants

Richard and Angela Snyder were lessees of the property during a one-year period from July 1, 1986, through June 30, 1987. The suit arose in June 1987, when defendants failed to make their monthly rental payment of $550 on June 1, the date it was due pursuant to the parties' lease agreement. William Sweasy, an attorney, filed his complaint *pro se* on June 11, seeking to recover the unpaid rent together with a $5-per-day late payment penalty, attorney fees and court costs as provided for in the lease.

On June 23, Sweasy appeared in court and orally petitioned for an *ex parte* order of *ne exeat* on the ground that defendants had threatened to move themselves and their personal property out of State the following day. The court granted plaintiffs' petition. The court further ordered defendants to post a cash bond in the amount of $2,000 and accepted plaintiffs' "personal bond" in the amount of $500. Defendants resisted the *ne exeat* order by filing a motion to quash on grounds that the bond set for them was excessive and the bond set for plaintiffs was inadequate to cover defendants' damages resulting from improper issuance of the order. Subsequently, on July 1, defendants paid plaintiffs $850, representing the June rent and late charges.

On July 2, the date set for a hearing on defendants' motion to quash, plaintiffs filed a response and a motion to amend their complaint to add allegations of damages for repairs to an air-conditioning unit and a riding lawn mower. The court heard the pending motions and granted them both, but ordered that the bonds ordered in connection with the order of *ne exeat* be continued.

On July 10, defendants answered the amended complaint and counterclaimed in two counts for damages for plaintiffs' alleged breaches of the implied warranty of habitability and the duty to repair. Numerous mesne motions, responses, and plaintiffs' second amended complaint were filed, and hearings were had. The matter was ultimately tried to the court in several settings between May 1988 and January 1989. Because of Judge Whitney's imminent retirement, the court ordered that the matter would be concluded by 5 p.m. of January 20, 1989, the last date set for completion of the trial on the main complaint. Defendants' motion for a continuance based on the unavailability of defendants' lead counsel, Wayne Harvey, was denied that morning. Harvey returned to court after the lunch break; and, under the circumstances, moved for and was granted a voluntary dismissal of defendants' countercomplaint. On January 30, the court entered its order finding that plaintiffs had met their burden of proof with respect to the June rent, mower repairs, and attorney fees and costs, for a total sum of $4,886.08. Plaintiffs' claims for repairs to the

air-conditioning unit and late payment penalties were denied. The court allowed a $1,400 offset for defendants' $550 security deposit and the $850 paid on July 1, 1987, and entered judgment for plaintiffs in the amount of $3,486.08. It is from this order that defendants appeal.

The issues defendants present for our consideration are: (1) whether the trial court erred in entering judgment for plaintiffs' attorney fees in the amount of $4,125; (2) whether the trial court's award of damages for repair of the riding lawn mower was improper; and (3) whether the trial court erred in granting plaintiffs an order of *ne exeat* without requiring them to post a cash bond. In their appellees' brief, plaintiffs raise additional issues charging error in the trial court's failure to award late payment charges pursuant to the parties' lease and in returning defendants' $2,000 cash *ne exeat* bond.

■■ ■ Before addressing defendants' arguments, we will dispose of the "cross-appeal." We have repeatedly stated that this court's jurisdiction will not be assumed and will be determined *sua sponte* even in the absence of a motion to dismiss. (See *Trizzino v. Kline Brothers Co.* (1982), 106 Ill. App. 3d 230, 435 N.E.2d 958.) In this case, the record on appeal contains no notice of cross-appeal as required by Supreme Court Rule 303 (107 Ill. 2d R. 303). Moreover, even if the notice were filed, we would reject the cross-appeal for plaintiffs' failure to allude to any authority in support of their arguments. We have previously cautioned parties that this court will not accept the burden of the appellees' argument and research. (*Dillard v. Kean* (1989), 183 Ill. App. 3d 28, 538 N.E.2d 914.) Accordingly, we dismiss the "cross-appeal."

■■ Next, we consider defendants' argument concerning the trial court's issuance of the *ne exeat* order. Defendants' primary contention is that the $500 "personal bond" posted by plaintiffs in lieu of a cash bond was not sufficient to justify issuance of the extraordinary relief. (See *Andersen v. Andersen* (1942), 315 Ill. App. 380, 43 N.E.2d 176.) *Ne exeat* is a statutory remedy to prevent a defendant from leaving the jurisdiction of the court. It is authorized by virtue of Article 16 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 16—101 *et seq.*). Pursuant to section 16—101:

> "Relief by *ne exeat republica* may be granted, in cases where the debt or claim is not actually due, but exists fairly and *bona fide* in expectancy at the time of making application, and in cases where the claim is due; and it is not necessary, to authorize the granting of such relief by *ne exeat*, that the applicant show that his or her debt or claim is purely of an equitable

character." (Ill. Rev. Stat. 1987, ch. 110, par. 16—101.)
When the relief is granted, section 16—104 provides for the posting of bonds by both petitioner and respondent. With respect to the former, the section recites:

> "The court shall *** require the *** petitioner, before a certified copy of the *ne exeat* order is issued by the clerk, bond with good and sufficient surety, in such sum as the court shall deem proper, conditioned that. the *** petitioner will prosecute the *** petition with effect, and will reimburse to the *** respondent such damages and costs as shall be wrongfully sustained by occasion of the granting of the relief by *ne exeat*." Ill. Rev. Stat. 1987, ch. 110, par. 16—104.

Plaintiffs' petition in this case alleged the nonpayment of the June rent and defendants' imminent move out of the court's jurisdiction, but failed to allege that plaintiffs held defendants' security deposit in the amount of $550 or that plaintiff was claiming any damages other than the $5-per-day late payment penalty and attorney fees related to the previously filed complaint. Plaintiffs' original form complaint then on file alleged the same damages, but included a demand for court costs. Significantly, in the space provided for credits and setoffs, the original complaint recites "none."

It was not until defendants filed their first motion to quash the *ne exeat* order that the security deposit was brought to the court's attention. That was on June 24, 1987. It was not until July 2, the date set for a hearing on defendants' motion to quash, that plaintiffs filed their first amended complaint alleging damages to the air-conditioner and the riding lawn mower.

■ Under these circumstances, the trial court's initial decision to grant plaintiffs' petition for the *ne exeat* order would appear proper. However, defendants correctly point out that the *ne exeat* statute does not give the court discretion to waive the *ne exeat* petitioner's obligation to post "bond with good and sufficient surety, in such sum as the court shall deem proper, conditioned that the *** petitioner *** will reimburse to the *** respondent such damages and costs as shall be wrongfully sustained by occasion of the granting of the relief by *ne exeat*." (See *Andersen*, 315 Ill. App. 380, 43 N.E.2d 176.) Plaintiffs have presented no authority in support of their argument that an attorney's status should exempt him from the bond requirement. On similar facts, the *Andersen* court reasoned that "[h]ad the legislature intended to vest the court with a discretion to excuse the plaintiff from giving a bond with sufficient surety, it would have manifested such intention by appropriate language. In Section [4], however, the

legislature has clearly stated that the court shall take or cause to be taken of the plaintiff before the [order] shall issue, a bond with good and sufficient surety." (315 Ill. App. at 388-89, 43 N.E.2d at 180.) The court specifically ruled that the plaintiff Andersen's "individual bond" in the amount of $100 was not even a "pretense of complying with the statute." 315 Ill. App. at 389, 43 N.E.2d at 180.

■ Likewise, in this case, plaintiffs' $500 "personal bond" cannot be said to satisfy the statutory bond requirement. As the trial court ultimately acknowledged, the *ne exeat* order was improperly issued. The trial court properly quashed the *ne exeat* order and returned defendants' $2,000 cash bond to them prior to the entry of judgment. However, as to this issue defendants have requested no relief in this court other than a reversal of the court's initial granting of the *ne exeat* order; therefore, a remandment on this ground will not be ordered.

■ We also find that defendants' challenge to the trial court's award of $90.98 to plaintiffs for defendants' failure to maintain and repair the riding lawn mower must fail. In this regard, defendants' primary contention is that the parties' lease agreement provided for the lessees' maintenance of a "Toro motorized lawn tractor," and the only lawn tractor on the leased premises was a John Deere. The trial court heard evidence supporting plaintiffs' theory that the lease's reference to a Toro model was a mere misnomer and that the damage to the mower for which plaintiffs had expended their own money for repairs had occurred during the leasehold period. This evidence was not rebutted in the trial court. Defendants' argument to the effect that the covenant to "maintain" does not include an agreement to "repair" is without merit. Therefore, we find that the trial court's factual findings are not contrary to the manifest weight of the evidence and will be sustained on appeal.

■ Lastly, we have considered defendants' issue concerning the propriety of the trial court's award of $4,125 in attorney fees, representing 51 hours expended by William Sweasy in pursuit of this action. We have previously alluded to the fact that the pleadings before the court at the time plaintiffs petitioned for a *ne exeat* order were not entirely accurate. Most significantly, plaintiffs did not allege defendants' entitlement to credit for their $550 security deposit or their July 1, 1987, check for $850 until plaintiffs filed their second amended complaint on November 8, 1988. The original and first amended complaints falsely indicated that no offset would apply against plaintiffs' claimed damages. At a minimum, plaintiffs were aware that defendants were entitled to a $550 offset at the time of

the filing of these complaints. Had this fact been disclosed in plaintiffs' initial complaint, we have no doubt that the trial court would have refused *ne exeat* relief. Under these circumstances, we hold that plaintiffs are not entitled to any fees for Mr. Sweasy's time in pursuing and defending the *ne exeat* order.

Moreover, because plaintiffs' evidence of damages for maintenance of the air-conditioning unit manifestly demonstrated to the court's satisfaction that the unit in question was old and beyond repair, plaintiffs are not entitled to recover attorney fees for time expended in connection with that claim. Finally, the trial court appropriately ruled that plaintiffs were not entitled to relief on their claim for late penalty payments, inasmuch as the amount defendants owed pursuant to the lease was a matter of dispute as of June 1, 1987.

■ In sum, plaintiffs' only supportable claims were for the June 1987 rent of $550, $90.98 for the lawn mower repairs, and for attorney fees and court costs expended in pursuit of these claims. Since defendants had paid plaintiffs a total of $1,400 towards their debt by July 1, 1987, plaintiffs' pursuit of this action beyond that date represents a needless extension of baseless claims for which no attorney fees should have been awarded. Accordingly, plaintiffs' award for attorney fees is hereby reduced from $4,125 for 51 hours to $247.50 for 3.3 hours. Plaintiffs' gross award before offset is reduced to $1,008.58; and, applying their $1,400 credit, defendants are entitled to a refund of $391.42.

The judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and modified in part. The cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; modified and remanded.

SCOTT and WOMBACHER, JJ., concur.