CHICAGO TITLE AND TRUST COMPANY as Trustee, Plaintiffs-Appellees and Cross-Appellants, v. BROOKLYN BAGEL BOYS, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (1st Division)   No. 1—89—3419

Opinion filed September 16, 1991.

Lawrence I. Serlin, of Highland Park, and Gerald Eisen, of Rosemont, for appellants.

Rosenthal & Schanfield, of Chicago (Robert R. Tepper and Alisa B. Arnoff, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants Highland Park Bagel Corporation (HPBC) and Luis Gorbena appeal a judgment of the circuit court of Cook County entered against them in an action concerning the breach of a commercial lease with plaintiff Chicago Title & Trust Company as trustee for the benefit of plaintiffs Bertha Abel and Arnold Roberts. Gorbena also appeals an order entering sanctions against him. Plaintiffs cross-appeal the judgment of the circuit court and the dismissal of Brooklyn Bagel Boys, Inc. (Bagel Boys), Morris Goldman and Gerald Geffen as defendants.

The record on appeal discloses the following. On December 13, 1980, plaintiffs signed a lease for commercial space located at 1866 First Street, Highland Park, Illinois, for the period from April 1, 1981, to March 31, 1986. The lease was also signed by Gorbena and Goldman for Bagel Boys as the tenant. Under the lease, Bagel Boys was responsible for paying monthly rent, a share of assessed real estate taxes and common area maintenance (CAM) expenses.

In February 1983, Goldman and Gorbena were the president and secretary-treasurer, respectively, of HPBC. On or about May 1, 1985, HPBC was dissolved by the Secretary of State for failure to file its annual report for 1984. After the dissolution, Geffen continued to file tax returns and wrote rent checks to plaintiffs from the account of "Brooklyn Bagel Boys-Highland Park Bagel Corp."

In a letter dated July 17, 1985, plaintiffs' agent wrote to Gorbena, Geffen and HPBC at the address identified in the lease. The letter stated that the lease was about to expire and indicated plaintiffs' terms for renewal. On a line marked "Accepted," Geffen and Gorbena signed as president and secretary, respectively, of HPBC. The signatures of plaintiffs Abel and Roberts also appear on the letter.

On October 10, 1988, plaintiffs' agent wrote to Gorbena, Geffen and HPBC, stating that rent for October had not been received and

that plaintiffs would resort to their remedies under the lease if payment was not made by October 18, 1988.

On December 16, 1988, plaintiffs filed suit against Bagel Boys, HPBC, Gorbena, Geffen and Goldman to recover amounts due under the lease, including, but not limited to: rent, taxes, CAM expenses and interest. Four days later, plaintiffs leased the space at issue to Over the Top, Ltd. On February 15, 1989, HPBC was reinstated by the Secretary of State.

On April 24, 1989, defendants moved to dismiss the claims against them pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), with the exception of HPBC. Following a hearing on the motion held that day, the trial court dismissed Bagel Boys with prejudice. The court also dismissed the complaints against Gorbena, Geffen and Goldman in their capacities as corporate officers. However, the trial court denied the motion to dismiss claims against Gorbena and Goldman in their capacities as corporate directors.

The remaining claims were set for trial on May 17, 1989, but were continued to July 10, 1989. Gorbena was not present in court on July 10; the trial court continued the case to July 26, 1989. The trial court was notified on July 25 that Gorbena could not be in court on July 26. The court entered orders directing Gorbena to pay plaintiffs' attorney fees and costs incurred in preparing for the July 10 date; directing plaintiffs to submit an affidavit of fees and costs; and continuing plaintiffs' oral motion for further sanctions against Gorbena.

The trial was held on August 2, 1989. No court reporter was present. The trial court entered judgment in favor of defendants Goldman and Geffen. The court also entered judgment against defendants HPBC and Gorbena as follows:

| | |
|---|---:|
| Unpaid Rent (4½ @ $1,400/mo.) | $6,300.00 |
| Repairs | 1,808.19 |
| Property Protection | 327.23 |
| Parking lot maintenance (4½ @ $30/mo.) | 135.00 |
| Taxes (4½ @ $100/mo.) | 450.00 |
| Interest per lease agreement | 675.73 |
| TOTAL | $9,696.15 |
| Less security deposit | (3,000.00) |
| | $6,696.15 |

The court further ordered HPBC and Gorbena to pay $5,000 in attorney fees. In addition, the court levied sanctions against Gorbena in the amount of $864.23.

Plaintiffs and defendants filed post-trial motions, which were denied on November 18, 1989. Defendants and plaintiffs seek review in this court. Plaintiffs have moved to compel defendants to submit a report of proceedings to this court and defendants have moved to dismiss plaintiffs' cross-appeal; both motions have been taken with the case.

On appeal, defendants contend that: (1) the trial court erred in excluding evidence relating to plaintiffs' mitigation of damages; (2) the trial court erred in holding Gorbena personally liable on the lease and in assessing sanctions against him; and (3) this court lacks jurisdiction to hear plaintiffs' cross-appeal. Plaintiffs contend that: (1) the trial court should have awarded rent and CAM expenses for six months, rather than 4½ months; (2) the trial court's calculation of taxes was inconsistent with the terms of the lease; (3) plaintiffs are entitled to post-judgment attorney fees and costs; (4) the trial court erred in entering judgment in favor of Goldman and Geffen; and (5) the trial court erred in dismissing Bagel Boys because the court relied on a purported assignment of the lease from Bagel Boys to HPBC which was alleged in defendant's motion to dismiss, but not in plaintiffs' complaint.

■■ Initially, it must be noted that neither side properly filed a report of proceedings in this case. No verbatim transcript was taken at trial and neither side filed a report pursuant to Rule 323(c) (134 Ill. 2d R. 323(c)) or an agreed statement of facts pursuant to Rule 323(d) (134 Ill. 2d R. 323(d)). Plaintiffs' motion to compel defendants to submit a report pursuant to Rule 323 is denied, as the provisions of the rule are not mandatory.

Plaintiffs did attach an "Agreed Report of Proceedings" to their brief. Attachments to briefs not otherwise before the court cannot be used to supplement the record. (*Regal Package Liquor, Inc. v. J.R.D., Inc.* (1984), 125 Ill. App. 3d 689, 691, 466 N.E.2d 409, 411.) This "report" does not appear in the record; moreover, it is signed only by plaintiffs' counsel.

The parties, however, stipulated to the "Agreed Report" during oral argument before this court. Supreme Court Rule 329 permits material omissions from and improper authentication of the record on appeal to be remedied by stipulation of the parties after the transmission of the record to this court or by the reviewing court. (134 Ill. 2d R. 329.) Thus, we accept the agreed report of proceedings and turn to the merits of the case.

■ First, defendants contend that they should not have been prevented from eliciting testimony relating to plaintiffs' mitigation of

damages. Generally, the decision to allow or exclude testimony is within the discretion of the trial court (*e.g., Peterson Welding Supply Co. v. Cryogas Products, Inc.* (1984), 126 Ill. App. 3d 759, 766, 467 N.E.2d 1068, 1073), as is the decision to allow or deny an amendment to a complaint (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 390, 385 N.E.2d 664, 669). To preserve an error regarding an evidentiary or amendatory ruling, a party typically must make an offer of proof to the trial court. (See *Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 1066, 502 N.E.2d 315, 326.) The formality required of an offer of proof, however, depends on the individual facts of the case. (*Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 369, 390 N.E.2d 417, 424.) Indeed, an offer of proof is unnecessary when the nature of the testimony is obvious. *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 640, 494 N.E.2d 541, 550.

In this case, the record indicates that defendants sought to elicit testimony from Mr. Loeb, plaintiffs' agent responsible for managing the subject property, both on cross-examination and when called as an adverse witness, concerning plaintiffs' efforts to secure a new tenant. Objections to such testimony were sustained under the general rule that failure to mitigate damages is an affirmative defense which must be pleaded and proved. (*E.g., Rozny v. Marnul* (1969), 43 Ill. 2d 54, 73, 250 N.E.2d 656, 666.) The record also indicates, however, that the trial court permitted Mr. Loeb to testify on direct examination that he was able to rent the space to another tenant from March 15, 1989, onward. The trial court also permitted Mr. Loeb to testify that the new tenant gained possession of the premises at issue in mid-February 1989.

■ Before discussing whether excluding testimony on mitigation was proper, we must first discuss the damages awarded under the lease. The primary task of a court interpreting a written lease is to discern and give effect to the intention of the parties as expressed in the language of the document as a whole. (*E.g., Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872.) The general rule of contracts that a plaintiff may recover damages only to the extent of its injury applies to leases. *Stride v. 120 West Madison Building Corp.* (1985), 132 Ill. App. 3d 601, 477 N.E.2d 1318.

Here, section 14.02 of the lease specifies two courses of action the landlord may take. First, the landlord may terminate the lease, which would obligate the defaulting tenant to pay "the cost of recovering the Premises, reasonable attorney's fees and rental due for the balance of the term, less the fair rental value of the Premises for the

balance of the term." Second, the landlord may terminate the defaulting tenant's right of possession without terminating the lease and relet the premises, which would obligate the tenant to pay the costs of performing any of the tenant's covenants, "the costs of recovering the premises, reletting and the rental provided for herein, and reasonable attorney's fees, less any sums received by Landlord upon reletting of the Premises."

■ Though the record shows that defendants did not pay rent from October 1988 through March 1989 and the record is unclear as to the amount of real estate taxes owed by defendants, the trial court based its award of damages on monthly expenses multiplied by 4½ months. The selection of 4½ months as the multiplier is supported by the agreed report of proceedings, which states that the trial court found that the new tenants were able to take possession in mid-February. Thus, we infer that the trial court factored mitigation into its calculations. We conclude that it was proper to do so in light of the rule limiting damages under the lease to those actually suffered. *Stride*, 132 Ill. App. 3d 601, 477 N.E.2d 1318.

We further conclude in this case that having decided to take mitigation into account, the trial court could not arbitrarily exclude evidence on the issue. Here, plaintiffs "opened the door" to such testimony during their direct examination of Mr. Loeb. The record does not show that defendants made an offer of proof but given this record, we believe that one was unnecessary, for it was obvious that Mr. Loeb was competent to testify further and the nature of the testimony was equally obvious. (*Passiales*, 144 Ill. App. 3d at 640, 494 N.E.2d at 550.) Moreover, the record shows that the defense was implicit in defendants' written interrogatories, lending support to the conclusion that no unfair prejudice to plaintiffs would have resulted from the excluded testimony. We therefore reverse and remand to permit defendants to plead and present evidence concerning mitigation of damages.

■ Next, Gorbena argues that the trial court erred in finding him personally liable on the lease. The judgment order appealed from in this case indicates that the trial court

"base[d] its decision with regard to Luis Gorbena on §8.65(3) of the Illinois Business Corporation Act and finds that §12.45(4)(d) of the Illinois Business Corporation Act is not controlling."

Section 8.65(a)(3) of the Illinois Business Corporation Act (BCA) provides in relevant part:

"The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolu-

tion, \*\*\* shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation incurred in so carrying on its business." (Ill. Rev. Stat. 1987, ch. 32, par. 8.65(a)(3).)

Section 12.45(d) of the BCA provides:

"Upon the issuance of the certificate of reinstatement, the corporate existence shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors and shareholders, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed." (Ill. Rev. Stat. 1987, ch. 32, par. 12.45(d).)

Gorbena contends that once HPBC was reinstated by the Secretary of State on February 15, 1989, section 12.45(d) of the BCA shifted any liability on the lease from himself to HPBC.

■ Section 12.45(d) of the BCA codifies the doctrine of "relation back," which permits a reinstated corporation to ratify actions taken on its behalf while it was dissolved, giving those actions legal effect from the time they were taken. (*Department of Revenue v. Semenek* (1990), 194 Ill. App. 3d 616, 618, 551 N.E.2d 314, 315.) However, section 12.45(d) does not transform individual liability into corporate liability or create a legal fiction contrary to the true nature of events. (See *Semenek*, 194 Ill. App. 3d at 618, 551 N.E.2d at 315; *In re Estate of Plepel* (1983), 115 Ill. App. 3d 803, 450 N.E.2d 1244.) In past cases involving potential personal liability for an obligation purportedly undertaken for a dissolved corporation, our courts have looked at the knowledge of the parties. *Cf. Steve's Equipment Service, Inc. v. Riebrandt* (1984), 121 Ill. App. 3d 66, 70, 459 N.E.2d 21, 24 (limiting personal liability to cases where the debtor knew or should have known of the dissolution); *Plepel*, 115 Ill. App. 3d at 807-08, 450 N.E.2d at 1247 (individual's estate held liable where creditors did not know they were dealing with a corporation).

■ In this case, we believe that the trial court reached a proper result, though we do not see the issue as one of which section of the BCA is controlling. Rather, we believe that sections 8.65 and 12.45 can be read together. Holding HPBC and Gorbena jointly and severally liable, as the trial court did, not only harmonizes these two sections of the BCA, but also comports with the rule established in *Plepel* and *Semenek* that personal liability cannot be transformed into possibly worthless corporate liability. HPBC may ratify the lease pur-

suant to section 12.45(d), but if it cannot pay debts so ratified, plaintiffs may recover from Gorbena pursuant to section 8.65(a)(3).

■■ Gorbena also contests the sanctions levied against him for delaying the trial. In Illinois, a party may not recover attorney fees or the costs of litigation absent a contract or statute providing for their recovery. (*Bank of Waukegan v. Epilepsy Foundation of America* (1987), 163 Ill. App. 3d 901, 909, 516 N.E.2d 1337, 1341-42 (and cases cited therein).) Although Illinois Supreme Court Rule 231(g) (134 Ill. 2d R. 231(g)) permits a court to condition a continuance on the movant's agreement to pay the opposing party's costs, it does not extend to the payment of attorney fees. *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.* (1980), 82 Ill. App. 3d 18, 24-25, 401 N.E.2d 1049, 1054; see also *Epilepsy Foundation of America,* 163 Ill. App. 3d at 909-10, 516 N.E.2d at 1342 (rejecting *dicta* in *Hallmark* which suggested fees might be awarded in some future case).

■ In this case, the judgment order refers to payment of "certain fees and costs" other than the attorney fees Gorbena and HPBC were ordered to pay pursuant to the lease. An earlier order refers to assessing attorney fees and costs regarding plaintiffs' preparation for the July 10, 1989, trial date. While the trial court could properly order Gorbena to pay the costs of delaying the trial, it could not award attorney fees. Thus, we reverse and remand for a determination of the costs alone.

Defendants' final argument is that this court lacks jurisdiction to hear plaintiffs' cross-appeal. This argument was also presented in a motion before this court which was taken with the case. The question of jurisdiction of the appellate court must be determined prior to deciding the merits of an appeal. *E.g., Mar Cement, Inc. v. Diorio Builders, Inc.* (1987), 153 Ill. App. 3d 798, 800, 506 N.E.2d 381, 383.

●■ In this case, the record contains no notice of cross-appeal as required by Supreme Court Rule 303 (134 Ill. 2d R. 303), which may result in dismissal. (*Sweasy v. Snyder* (1989), 192 Ill. App. 3d 749, 752, 549 N.E.2d 613, 614.) A "Notice of Cross-Appeal" is attached to plaintiffs' brief, but it bears no markings indicating that it was filed. An attachment to a brief is no substitute for compliance with supreme court rules. (*Regal Package Liquor, Inc.,* 125 Ill. App. 3d at 691, 466 N.E.2d at 411.) Hence, we grant defendants' motion to dismiss the cross-appeal. *Sweasy,* 192 Ill. App. 3d at 752, 549 N.E.2d at 614.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part and remanded

for further proceedings consistent with this opinion. Plaintiffs' cross-appeal is dismissed for want of jurisdiction.

Affirmed in part; reversed in part and remanded; cross-appeal dismissed.

BUCKLEY and O'CONNOR, JJ., concur.