ANDREW P. MINYO, Plaintiff-Appellee, v. CHRISTOPHER P. MI Defendant-Appellant.

First District (1st Division) No. 1—89—2645

Opinion filed September 30, 1991.

Rolland H. Stimson, of Chicago, for appellant.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

This appeal arises from a judgment entered by the trial court in favor of plaintiff in an action to enforce a constructive trust and for partition of certain real estate. Plaintiff cross-appeals on the issue of whether the trial court abused its discretion in denying plaintiff's request for attorney fees.

Plaintiff Andrew Minyo and defendant Christopher Minyo are brothers. In September of 1976, plaintiff approached the defendant about the possibility of purchasing a building at 5419 N. Glenwood in Chicago. The parties discussed purchasing the property as equal partners, with each paying half of the expenses, and plaintiff being responsible for the paperwork, while defendant would perform all of the maintenance on the building. Plaintiff alleged that the parties subsequently entered into this agreement and brought suit to enforce a constructive trust and for the partition of the real estate. Defendant maintained that the brothers never reached an agreement to purchase the property as partners. The trial court found that the parties were joint venturers in the real estate and the proceeds from it and that plaintiff was entitled to an accounting as to the proceeds. This appeal followed.

About September 1976, Alice Johnson offered plaintiff the opportunity to purchase the Chicago building that she owned and in which plaintiff was a tenant. Plaintiff advised her that he was interested in purchasing the building and began to look for financing. Plaintiff inquired with several lenders and was advised that he would need 20% to 30% as a down payment because the property was income-producing property. He was also advised that he could possibly obtain the property with a Veterans Administration (VA) loan. However, because plaintiff had not served the required six months' active duty, he was not eligible for a VA loan.

That same month, plaintiff approached his brother, defendant Christopher Minyo, and asked him whether he would be interested in going in as plaintiff's partner to purchase the property. Plaintiff testified that he explained to defendant that they each would share a 50% interest in the property, and that plaintiff would be responsible for preparing the paperwork to complete the purchase and would pay 50% of the expenses. He stated that defendant agreed to the arrangement. Defendant testified that they discussed the 50-50 arrangement

whereby he would pay one-half of the expenses, but that an agreement was never reached.

Defendant advised plaintiff that he did not have money for the down payment, and plaintiff offered to pay defendant's portion of the payment with money that he owed to defendant. At that time, plaintiff owed defendant $2,900 for two loans that defendant made to him in 1970 and 1971. Plaintiff testified that defendant agreed to this offer and that he advised defendant that they could sell the building after repairing it and possibly buy other properties together.

In October 1976, plaintiff, his wife, their attorney, Robert Bisaillon, and the seller met to discuss the sales terms for the property. Attorney Bisaillon testified that he took notes and drafted a sales contract five days later. He testified that it was his understanding that plaintiff and defendant were partners and that he was representing both plaintiff and defendant in the purchase of the building. Bisaillon stated that he did not meet defendant until the day of closing.

In November 1976, plaintiff and defendant met. There is conflicting testimony regarding who else was present at that meeting; however, at that time plaintiff presented defendant with the contract and defendant testified that plaintiff's name had been stricken from the contract. Plaintiff testified that he advised defendant that the partnership still existed in accordance with the September agreement and that he would pay 50% of all expenses.

Defendant testified that plaintiff told him he could not sign the contract because there were "too many problems." He stated that he signed the contract without reading it and that he trusted plaintiff's ability to handle the paperwork. Defendant stated that at the time he signed the contract he no longer believed plaintiff was a 50% owner of the building.

Plaintiff testified that he assisted defendant in preparing papers for the VA loan to finance the purchase of the building. As part of the closing costs, plaintiff contributed $4,600 from his personal funds and a check for $2,400 that he received from Alice Walker. Defendant claimed that, after plaintiff gave him the check for $4,600, he stated "this is the money I owe you, now we are even."

Prior to the closing on March 4, 1977, plaintiff and defendant discussed with attorney Bisaillon the possibility of placing the property in a land trust. Bisaillon testified that he advised the brothers his understanding was that they were to have a 50-50 partnership with equal rights, responsibilities, duties and obligations. He also advised them to have a joint venture or partnership agreement. Bisaillon stated that defendant acknowledged he understood by nodding his

head and saying yes; plaintiff repeated the words of the attorney in his own words. Bisaillon testified that defendant never said anything to indicate that the arrangement between defendant and plaintiff was less than 50-50.

After the closing plaintiff continued to live in the building and make $200 monthly payments to defendant. Plaintiff testified that these payments were for the mortgage, but defendant claimed that the payments were for rent. Plaintiff and his wife frequently assisted defendant with maintenance work and repairs on the building. Plaintiff testified that he contributed money to repair his own apartment.

In 1977 plaintiff discussed with defendant the need to place their partnership agreement into writing, but defendant advised him that he wanted to keep things as they were. In 1980 plaintiff again discussed with defendant the need for a written agreement. He offered to buy out defendant's equity for $45,000 and assume the loan, but defendant did not accept the offer. In 1983 defendant offered to sell plaintiff his interest in the property, but plaintiff did not accept the offer.

In 1984 plaintiff moved out of the building and stopped paying rent pursuant to a court order. Defendant continued making mortgage payments until 1987 when the building was sold.

Although at trial the defendant denied that plaintiff had a 50-50 interest in the property, he acknowledged that plaintiff's initial contribution of $4,600 amounted to a 12% interest in the property. Defendant stated in his deposition testimony that he and plaintiff had discussed a 50-50 arrangement, but that such an agreement was never reached.

The trial court found that both defendant's and plaintiff's conduct indicated that plaintiff was a partner from the beginning of the transaction and for years after that time. The court focused on the formation of the partnership, specifically the initial conversation between the parties at which time plaintiff had proposed an equal partnership in the purchase of the property. The court also relied on the testimony of attorney Bisaillon. The court found his testimony extremely credible and explained that in representing the parties it was Bisaillon's job to know the relationship of the parties.

Defendant argues on appeal that the trial court's determination that a joint venture existed between the parties was against the manifest weight of the evidence. We disagree.

■ Preliminarily, we note that plaintiff raised a motion in his brief to strike defendant's brief, alleging that the brief did not contain a fair statement of the facts. The statement of facts in both briefs

contain contradictory trial testimony. On review, this court disregards inappropriate statements contained in either brief. Therefore, striking defendant's brief is unwarranted. *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 452, 510 N.E.2d 531.

Additionally, plaintiff raises a cross-appeal to recover attorney fees. He contends that the trial court abused its discretion in failing to award him attorney fees. We have repeatedly stated that this court's jurisdiction will not be assumed and will be determined *sua sponte* even in the absence of a motion to dismiss. (*Sweasy v. Snyder* (1990), 192 Ill. App. 3d 749, 549 N.E.2d 613.) In this case, the record on appeal contains no notice of cross-appeal as required by Supreme Court Rule 303 (107 Ill. 2d R. 303). This court will not accept the burden of the appellee's argument and research. (*Dillard v. Kean* (1989), 183 Ill. App. 3d 28, 538 N.E.2d 914.) Accordingly, we dismiss the "cross-appeal." We next address defendant's argument that no joint venture existed.

A joint venture is an association of two or more persons to carry on a single enterprise for profit. (*Herst, Inc. v. Chark* (1991), 219 Ill. App. 3d 690, 694.) The existence of a joint venture is inferred from the facts and circumstances with the intent of the parties being the most significant element. *Dawdy v. Sample* (1989), 178 Ill. App. 3d 118, 126, 532 N.E.2d 1128.

Generally, the following elements are determinative of such an intent: (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill, or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) provision for joint sharing of profits and losses. (*Ambul v. Swanson* (1987), 162 Ill. App. 3d 1065, 516 N.E.2d 427.) Whether a joint venture exists is a question for the trier of fact, as it is in the best position to judge the credibility of the witnesses. (*Baker Farmers Co. v. ASF Corp.* (1975), 28 Ill. App. 3d 393, 328 N.E.2d 369.) The trial court's determination of factual matters will only be reversed when it is contrary to the manifest weight of the evidence. *Dawdy v. Sample* (1989), 178 Ill. App. 3d 118, 125, 532 N.E.2d 1122.

In this case, the record consists of depositions and the in-court testimonies from plaintiff, defendant and attorney Bisaillon. Plaintiff's wife, Lucy Minyo, gave only trial testimony. Plaintiff testified at his deposition hearing that in September 1976, he discussed with defendant the possibility of the two "going in together" to purchase the building. Defendant does not deny this fact, although his deposition

testimony conflicts with his trial testimony. Plaintiff testified that he met in his apartment with his wife and defendant where the 50-50 arrangement was discussed. At a subsequent meeting with attorney Bisaillon present, plaintiff testified that his name was removed from the real estate contract, but that he explained to defendant that they were still 50-50 partners. He further testified that he and defendant agreed to contribute $200 to cover the mortgage and monthly expenditures. Plaintiff provided the down payment costs and handled the application and closing arrangements as the parties had agreed.

Prior to closing, attorney Bisaillon advised plaintiff and defendant that if they wanted to formalize their agreement in writing, it could be done at a future date. He stated that the parties did not indicate that there was a contrary agreement. After the closing, plaintiff made his monthly contribution of $200, and also contributed labor towards the maintenance of the building. Plaintiff's in-court testimony was substantially similar to his deposition testimony.

Defendant testified at his deposition hearing that plaintiff discussed the possibility of "going in" on the purchase of the building with him, but that no agreement was ever reached. Defendant claimed that there was no agreement that they each would pay 50% of the expenses for the property, although it was discussed. He testified that he was responsible for taxes and utilities for the property.

Defendant testified that when he saw the real estate sales contract plaintiff's name had been crossed out. He believed that this indicated plaintiff was no longer an owner. Defendant denied that he was advised by attorney Bisaillon that plaintiff had interest in the property. He claimed that his understanding of 50-50 meant that both parties' names would be on the title.

Defendant testified at trial that he believed plaintiff was simply discharging a debt owed to defendant when he gave him the money for the down payment, and that plaintiff had no ownership interest in the property.

Attorney Bisaillon testified at the deposition hearing that plaintiff contacted him in September 1976 regarding the purchase of a building. He met with plaintiff, his wife, defendant and the seller about October 26, 1976. At that meeting the sales terms of the property were discussed. Bisaillon prepared a written contract about five days later, and testified that it was his understanding he was representing plaintiff and defendant. He stated that plaintiff advised him that he and his brother were purchasing the property together. About December 1976, plaintiff contacted Bisaillon and advised him that it was bet-

ter to let defendant apply for a VA mortgage because of the unsatisfactory terms under a conventional mortgage.

Bisaillon testified that prior to the closing he met with plaintiff and defendant and advised them that because of their 50-50 interest and marital status, a land trust could serve their interest. Neither plaintiff nor defendant expressed any concern that they were less than 50-50 owners, and acknowledged that they understood the benefits of the land trust.

After hearing all of the evidence, the trial court concluded that the parties were engaged in a joint venture and granted plaintiff's petition to enforce a constructive trust.

We initially note that defendant cites sparse authority for the proposition that no joint venture existed. Notwithstanding that fact, defendant asserts that the evidence in the record does not show an intent on defendant's part to have a joint venture.

■ While it is true that no written agreement establishing a joint venture existed between plaintiff and defendant, that fact alone is not controlling. Proof of the existence of this relationship may be made by the evidence of surrounding circumstances without evidence of any formal agreement. (*Polikoff v. Levy* (1965), 55 Ill. App. 2d 229, 204 N.E.2d 807, *cert. denied* (1965), 382 U.S. 903, 15 L. Ed. 2d 156, 86 S. Ct. 237.) Although defendant suggests that the lack of a formal agreement supports his argument that there was no intent to engage in a joint venture, the facts do not support that conclusion.

The record discloses that attorney Bisaillon advised defendant before the closing that the arrangement between the parties was a 50-50 partnership. Attorney Bisaillon's testimony was corroborated by plaintiff's testimony. Defendant did not raise opposition to the characterization of the relationship. Additionally, Lucy Minyo testified that she was a witness to the conversation where defendant agreed to the 50-50 arrangement. Defendant went forward with the purchase and accepted plaintiff's $200 monthly contributions.

In *Russell v. Klein* (1975), 33 Ill. App. 3d 1005, 339 N.E.2d 510, the defendant and plaintiff were engaged in the rehabilitation of property owned by defendant. Defendant testified that she and plaintiff jointly agreed to contribute financially to the rehabilitation of the property. Plaintiff was to contribute in cash approximately the same amount as defendant's contribution, which was her equity in the property. Plaintiff issued six checks for payment of various expenses in developing the property, but argued that the money he expended was a loan to defendant. The appellate court held that the trial court properly determined the parties had entered into a joint venture.

In this case, nowhere in the record is there testimony that the terms of the agreement between the parties were required to be in writing in order that they be binding. Moreover, defendant's explanation that plaintiff provided the down payment and arranged for the closing simply to repay a debt owed to defendant is unpersuasive. What is clear from the facts is that plaintiff expended $4,600 on the down payment to purchase a building from his personal funds. Both of the parties contributed $200 monthly to cover the taxes, mortgage, utilities and maintenance of the building. They also shared in the minor repairs and installation of fixtures for the building. The trial court found that there was an agreement to share in the profits and losses from the property, and that defendant believed from the beginning that such an agreement existed. The court also found the testimony of attorney Bisaillon extremely credible.

Based upon the foregoing, we cannot say that the court's determination that a joint venture existed was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.