CARDEM, INC., Plaintiff-Appellee, v. MARKETRON INTERNATIONAL, LTD., Defendant (Theodore A. Koyzis, Defendant-Appellant).

Second District    No. 2—99—1451

Opinion filed May 31, 2001.

Robert A. Gornik, of Wheaton, for appellant.

Noel C. Davis, of Banbury, Davis & Erschen, P.C., of Aurora, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Theodore A. Koyzis (Koyzis), appeals from a summary judgment order that held that he was personally liable for a promissory note because the corporation on whose behalf he purportedly signed the note was dissolved at the time he signed it. Koyzis contends there are two reasons why he is not personally liable for the note: (1) the conduct that gave rise to the note occurred prior to the dissolution of the corporation; and (2) the reinstatement of the corporation ratified the debt as a corporate obligation. We affirm.

Plaintiff, Cardem, Inc. (Cardem), filed a multicount complaint against various defendants. This appeal is limited to the first count of the complaint, which was a claim against Koyzis and Marketron International, Ltd. (Marketron), alleging that Marketron, through Koyzis, its president, had signed a promissory note on April 25, 1997

(the April 25 note), agreeing to repay Cardem the sum of $465,600 plus interest on October 1, 1997; that on May 1, 1997, Marketron paid Cardem $40,000; and that Marketron failed to pay the balance of the note on the due date. The debt arose prior to Marketron's dissolution and was based on $465,000 paid by Cardem to Marketron in 1992 to purchase cigarettes. Marketron never delivered the cigarettes and in 1993, Koyzis, as president of Marketron, signed a note agreeing to repay Cardem $465,000.

In its motion for summary judgment, Cardem contended that Koyzis was personally liable for the April 25 note because Koyzis signed the note knowing that Marketron had been dissolved. The documents attached to Cardem's motion included a letter from the Illinois Secretary of State to John Stock III, (Stock), who was Marketron's registered agent and Koyzis's attorney at the time, showing that Marketron was dissolved effective March 1, 1994, for failure to file an annual report and failure to pay a franchise tax. Another attached document from the Secretary of State showed that Marketron was reinstated effective July 16, 1997.

Excerpts of depositions of Koyzis and Stock were also attached to Cardem's motion. Koyzis' deposition showed that Koyzis was the only active officer and shareholder of Marketron; Koyzis signed the April 25 note as president of Marketron in the offices of his attorney, Stock; the April 25 note replaced a prior note that was executed in 1993; and Stock had informed Koyzis sometime in the 1990s that Marketron had been dissolved due to the failure to file annual reports.

Stock's deposition showed that Stock was the registered agent for Marketron; on March 25, 1994, Stock's office received a letter from the Secretary of State advising that Marketron had been dissolved on March 1, 1994; Stock sent a letter dated March 28, 1994, to Koyzis regarding the dissolution which stated, in part:

" 'This means you cannot transact business in that capacity. I would, therefore, strongly suggest that if you intend to keep this corporation viable, that you forward to the Secretary of State the annual report and the franchise tax ASAP.' "

Stock's deposition further showed that in June 1997 Stock submitted to the Secretary of State an application for reinstatement seeking Marketron's reinstatement; the Secretary of State responded that annual reports for 1993, 1994, 1995, and 1996 would be required for reinstatement; on June 30, 1997, Stock completed the annual reports for those four years and resubmitted the application for reinstatement; Marketron was reinstated on July 16, 1997; as far as Stock knew, Marketron remained dissolved from 1994 until its reinstatement on July 16, 1997; the purpose of the meeting in Stock's office on April 25,

1997, when Koyzis signed the note, was to threaten Koyzis with legal action unless he paid money to Cardem.

In Koyzis' response to Cardem's motion for summary judgment Koyzis asserted, in relevant part, that he was not personally liable for the April 25 note because under the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 1998)) and applicable case law, Marketron's reinstatement ratified the note as a corporate obligation. In his deposition, Koyzis had been asked whether when he signed the April 25 note he felt that he would be personally liable for the note. Koyzis responded "No. I signed it on behalf of the corporation, but that didn't make any difference. They were after me, not the corporation, because they knew the corporation had no assets."

On appeal, Koyzis contends that the trial court erred in granting summary judgment in favor of Cardem. As in all cases involving summary judgment, our standard of review is *de novo*. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

In this case, the facts are not in dispute. Koyzis contends that the trial court erred in granting summary judgment in favor of Cardem because the court erred in finding that Koyzis was personally liable on the April 25 note. In support of this contention, Koyzis cites section 12.45(d) of the Business Corporation Act of 1983 (Act) (805 ILCS 5/12.45(d) (West 1998)). Koyzis correctly asserts that section 12.45(d) "codifies the [common-law] doctrine of 'relation back,' which permits a reinstated corporation to ratify actions taken on its behalf while it was dissolved, giving those actions legal effect from the time they were taken." *Chicago Title & Trust Co. v. Brooklyn Bagel Boys Inc.*, 222 Ill. App. 3d 413, 420 (1991). Koyzis argues that, under section 12.45(d), Marketron's reinstatement ratified his signing of the April 25 note and confirmed the note as a corporate obligation.

Koyzis acknowledges that section 12.45(d) does not expressly address the effect of a corporation's reinstatement on personal liability that might have arisen from a corporate officer's acts while the corporation was dissolved. Therefore, in support of his argument that he was not personally liable on the April 25 note, Koyzis cites *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582 (1996), which did not involve the application of section 12.45(d).

In *Norcon*, Norcon was a closely held corporation engaged in the construction business. Douglas and Patricia Kaulas were Norcon's president and secretary and primary shareholders. In 1991, while Norcon was incorporated, Norcon subcontracted with Mid-American for work on a construction project. In the same year, Mid-American sued Norcon for breach of the contract. In 1994, while the suit was pending, the Secretary of State involuntarily dissolved Norcon for failing to

pay franchise taxes. Norcon was never reinstated. In 1995, the court in the contract suit entered a judgment of $75,930 in Mid-American's favor. When the judgment was not paid, Mid-American served the Kaulases with a citation petition that contained provisions prohibiting transfers or dispositions of Norcon's property pending the resolution of the citation proceedings. *Norcon*, 287 Ill. App. 3d at 585.

During the citation proceedings it was established that the Kaulases continued to conduct business as Norcon's officers from the date that Norcon was dissolved through the time of the proceedings. These activities included beginning at least two new projects. In addition, after receipt of the citation, checks made payable to Norcon were deposited into a separate account designated "Norenco." Funds from the Norenco account were disbursed to pay Norcon's suppliers, contractors, creditors, and employees and to cover personal expenses of the Kaulases. The trial court granted Mid-American's motion seeking the turnover of funds in the Norenco account and another account and extended a restraining order against the Kaulases. During further proceedings, Douglas Kaulas averred that he had received notice of Norcon's dissolution but had not understood its significance. The trial court subsequently entered judgment against Douglas and Patricia Kaulas, jointly and severally, for the outstanding balance of the judgment against Norcon. *Norcon*, 287 Ill. App. 3d at 585-87.

The Kaulases appealed contending that the trial court erred in holding them personally liable for the balance of the judgment against Norcon. The appellate court considered sections 3.20 and 8.65(a)(3) of the Act (805 ILCS 5/3.20, 8.65(a)(3) (West 1998)) and concluded that these sections did not require that the Kaulases be held personally liable. The court noted that the conduct giving rise to the judgment at issue occurred long before Norcon's dissolution and that a corporation's officers generally are not liable for corporate debts or liabilities.

In this case, Koyzis asserts that the trial court erred in holding him personally liable for the April 25 note because the April 25 note merely replaced the note that he signed in 1993 prior to Marketron's dissolution. Koyzis argues that, just as with the defendants in *Norcon*, he should not be held liable for a debt that was incurred while the corporation was in good standing.

Cardem responds by citing cases in which the courts construed section 12.45(d) (805 ILCS 5/12.45(d) (West 1998)) and other sections of the Act and held that, even though a corporation was reinstated pursuant to section 12.45(d), officers who conducted purported corporate business while the corporation was dissolved were not relieved of personal liability for debts incurred by the business during the period of the dissolution. See *Chicago Title & Trust*, 222 Ill. App.

3d at 420; *Department of Revenue v. Semenek,* 194 Ill. App. 3d 616, 618-19 (1990). Cardem also cites cases that, without construing section 12.45(d), held that officers of a corporation could be held personally liable for debts incurred by the business during a period of corporate dissolution. See *Steve's Equipment Service, Inc. v. Riebrandt,* 121 Ill. App. 3d 66, 70 (1984); *In re Estate of Plepel,* 115 Ill. App. 3d 803, 807 (1983).

The policy underlying these decisions was set out in *Plepel,* where the court decided, as an issue of first impression, that an officer of a corporation that had been involuntarily dissolved and was later reinstated was personally responsible for debts incurred by the business during the period of dissolution. The *Plepel* court based its decision on a survey of the opinions of other jurisdictions that had addressed this question and agreed with those that imposed personal liability on such an officer. *Plepel,* 115 Ill. App. 3d at 806. In discussing one of these opinions, the *Plepel* court stated:

> "[T]he court noted that if the reinstatement of the corporation were held to 'relate back' so as to nullify the personal liability of the person who incurred the debts, a former officer of a dissolved corporation could obtain credit, and subsequently shift his personal liability to the corporation simply by paying the arrearage in franchise tax. [Citations.] We agree that such a result is against public policy because it would create a mechanism by which just debts could be easily evaded." *Plepel,* 115 Ill. App. 3d at 806-07.

Section 8.65(a)(3) of the Act provides:

> "The directors of a corporation that carries on its business after the filing by the Secretary of State of articles of dissolution, otherwise than so far as may be necessary for the winding up thereof, shall be jointly and severally liable to the creditors of such corporation for all debts and liabilities of the corporation incurred in so carrying on its business." 805 ILCS 5/8.65(a)(3) (West 1998).

We believe that the court in *Chicago Title & Trust* correctly read section 8.65(a)(3) in conjunction with section 12.45(d) and the policy considerations set out in *Plepel* when it concluded that an officer of a corporation that has been involuntarily dissolved and is later reinstated is not relieved of personal liability for debts incurred by the business during the dissolution. *Chicago Title & Trust,* 222 Ill. App. 3d at 420.

Applying these principles to this case, we conclude that the trial court properly granted summary judgment in favor of Cardem after finding that Koyzis was personally liable for the April 25 note. It is undisputed that Koyzis was aware that Marketron had been involuntarily dissolved effective March 1, 1994, and that Marketron was not

reinstated until July 16, 1997. In 1994, after Marketron's dissolution, Koyzis's attorney advised Koyzis in writing that, because of the dissolution, Koyzis could not transact business in his capacity as a corporate officer of Marketron. Nonetheless, on April 25, 1997, during the period of Marketron's dissolution, Koyzis signed a promissory note as president of Marketron.

We find *Norcon,* the case relied on by Koyzis, inapplicable to the facts of this case. *Norcon* involved the efforts of a judgment creditor to collect from the officers of the corporate judgment debtor on the basis that the corporation had been dissolved during the pendency of the underlying suit against the corporation. The officers had done nothing with regard to the corporate debt after dissolution except possibly retain or dispose of corporate assets improperly. The court held that the officers would be responsible for a full accounting in that event, but would not otherwise be liable for the corporate debt. Moreover, although the court considered other sections of the Act, it did not expressly base its decision to any extent on section 12.45(d) of the Act.

In this case, Koyzis, unlike the defendants in *Norcon,* took the affirmative step to sign, purportedly as president of a corporation which he owned and which had been dissolved nearly three years earlier, a new note with different terms. He was motivated to do so, in part, because the creditor threatened to try and hold him personally liable on the debt. Cardem had agreed to forego legal action against Koyzis in return for Koyzis's signing of the new note. Thus, by signing the April 25 note, Koyzis received the personal benefit of forestalling legal action against him. It is also undisputed that Koyzis was aware that Marketron had no assets and that he should not transact business under the guise of conducting Marketron's business while Marketron was dissolved.

Based on this record, we conclude that the trial court correctly ruled that Koyzis was personally liable for the April 25 note when he signed it and that the reinstatement of Marketron did not relieve Koyzis of his personal liability for the note. Accordingly, the trial court did not err when it entered summary judgment against Koyzis.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.