H&H PRESS, INC., *et al.*, Plaintiffs-Appellees, v. DREW AXELROD *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—93—1252

Opinion filed July 15, 1994.

Gershon S. Kulek, of Chicago, for appellants.

David G. Harding, of Chicago, for appellees.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiffs instituted this action against defendants seeking damages for an alleged breach of an oral agreement. After a bench trial, the court found in favor of plaintiffs and entered judgment against defendants in the total amount of $20,945.69. The order entered by the court held further that defendant Amy Kulek, a/k/a Amy Axelrod, was personally liable for the judgment. Defendants appeal, claiming that the trial court erred in (1) admitting into evidence photocopies of plaintiffs' business ledger book, (2) denying defendants' motion for a finding in their favor based upon the plaintiffs' failure to respond to the factual allegations contained in defendants' affirmative defenses, (3) entering judgment in favor of plaintiffs despite the fact that no evidence was introduced to establish the reasonable market price for the work performed by plaintiffs, (4) finding that defendant Amy Kulek, a/k/a Amy Axelrod, was an officer of TradExpo, Inc., and (5) finding that defendant Amy Kulek, a/k/a Amy Axelrod, was personally liable for the judgment in favor of plaintiffs. `

The record reveals that plaintiffs filed a verified complaint in the municipal division of the circuit court of Cook County seeking payment for printing services for defendants. Plaintiffs alleged that defendants had agreed to pay $22,831.73 for the printing services provided by plaintiffs. Count I of the complaint requested damages in the amount of $15,326.69, and count II sought damages in the amount of $5,752, for a total of $21,078.69, which represented the unpaid balance under the agreements. Attached as exhibits to the complaint were photocopies of certain statements issued by plaintiffs to defendants for work done from February through April 1992.

Because no verbatim transcript of the trial was available, the record contains an agreed report of proceedings pursuant to Supreme Court Rule 323(d) (134 Ill. 2d R. 323(d)). The evidence adduced at trial established that from February 1992 until the end of April 1992, the plaintiffs performed certain printing work for defendants, who did business as TradExpo, Inc. TradExpo, Inc., had been involuntarily dissolved on January 2, 1991, for failure to file its annual report and to pay the franchise tax for 1990. Defendants were unaware of the involuntary dissolution until September 1992, when the instant cause of action was brought against them personally. Counsel for defendants effected the reinstatement of the corporation after the filing of plaintiffs' complaint.

According to the agreed report of proceedings, the three witnesses called by the plaintiffs were Howard Hammond, Mary Hammond, and Amy Kulek, a/k/a Amy Axelrod, one of the defendants, who was examined as a hostile witness pursuant to Supreme Court Rule 238 (134 Ill. 2d R. 238). The exhibits presented by plaintiffs consisted of 31 documents, which were marked "A" through "AE" and which were admitted into evidence upon examination of Howard Hammond, president and keeper of the records of H&H Press, Inc., and of Mary Hammond, keeper of her own records. These exhibits included photocopies of invoices for work done by plaintiffs for defendants as well as copies of notes and orders from defendants and copies of the printing work actually done by plaintiffs.

Defendants objected to the admission of exhibit "W," which consisted of two pages and which purported to be photocopies of the relevant pages in the permanent ledger book of H&H Press, Inc. Defendants' objection was predicated upon hearsay and upon plaintiffs' failure to produce the original ledger entries in accordance with the "best evidence rule." After counsel for defendants raised this objection, plaintiffs' attorney inquired of Howard Hammond, the witness, "[t]he original record is large and heavy, is it not?" Hammond answered "[y]es." No further objection was raised by defendants. Defendants also objected to the admission of plaintiffs' exhibit "V," which was a two-page statement dated June 4, 1992, from H&H Press, Inc., to TradExpo, Inc. Defendants' objection to this exhibit was based upon hearsay and upon the claim that the statement was self-serving. Although the agreed report of proceedings does not reflect the trial court's rulings on defendants' objections to these exhibits, the ledger pages and the statement contained in exhibits "V" and "W" were ultimately admitted into evidence.

Howard Hammond testified that there was no written agreement between H&H Press, Inc., and defendants, but that he had done business with Drew Axelrod and Amy Kulek since March 1991. Howard Hammond testified further that defendants rarely showed any concern for price; the prices charged defendants were at or slightly below market price; each invoice was delivered at the time the printing services were performed; where work was previously quoted, it was produced at the quoted price; and at no time after delivery did either defendant express any concern with price. Howard Hammond also testified that the procedure used in pricing the 10 disputed invoices was the same procedure used in pricing the previous 19 invoices which had been paid by defendants. Howard Hammond acknowledged that for some of the printing work performed for defendants, the prices indicated in the invoices had not been

previously agreed to by the parties before the work was done. According to Howard Hammond, the defendants made the printing orders, and he did the work.

Plaintiff Mary Hammond testified that at the beginning of her business relations with defendants, Amy Kulek gave her a business card, admitted as plaintiffs' exhibit "AB," which reflected that Amy Kulek was "Vice President" of TradExpo, Inc. Mary Hammond testified further that the invoices admitted as plaintiffs' exhibits "Y" and "Z" were for color separation work which she had contracted out to a company called Classic Litho, to whom she had already made partial payments totaling $600 and to whom she remained indebted for the balance. Mary Hammond also stated that since April 22, 1992, Classic Litho had informed her that it had received a partial payment of $133 directly from the defendants without explanation, for which Mary Hammond's account had been credited. Mary Hammond testified further that the color separations done by Classic Litho were for the gourmet show book which was admitted as plaintiffs' exhibit "P." According to Hammond, the prices charged for the color separations were the market prices for such work and that neither defendant had objected to the prices charged. Mary Hammond also stated that several of the orders received by H&H Press, Inc., were placed by defendant Amy Kulek. On cross-examination, Hammond stated that although she had offered to quote prices to defendants, they were not interested in the price quotes and requested immediate production.

Defendant Amy Kulek admitted that she had given the business card admitted as plaintiffs' exhibit "AB" to Mary Hammond before she had any dealings with Hammond or with H&H Press, Inc. Kulek testified further that the business card had been incorrectly printed, and, if correctly printed, would have stated "Vice President of Sales" rather than "Vice President." Kulek also testified that she did not believe she was an officer of TradExpo, Inc., and that she carefully confined her activities to use of the telephone, selling, and meeting potential buyers. Kulek stated further that she did not know that the corporation had been dissolved until the commencement of the instant action.

Drew Axelrod testified that he was the president and sole officer of TradExpo, Inc., and that the company was an "officer-run" company, having no board of directors. Axelrod testified further that he had complained about the prices charged by plaintiffs but had not reduced his complaints to writing, and he could not recall when he had complained. Axelrod stated that when he learned that TradExpo, Inc., had been involuntarily dissolved, he directed an attorney to

effect reinstatement of the corporation. The annual reports for the years 1990, 1991 and 1992 were filed, and the corporation was reinstated after plaintiffs had commenced the instant litigation.

Drew Axelrod testified that there was no agreement, written or oral, for the work produced by either plaintiff. Axelrod stated further that he had made two payments of $5,000 each, and he produced copies of cancelled checks which documented these payments. Axelrod acknowledged, however, that no payment had been made against the balance due on the invoices set forth in the complaint.

Derrick Scholl, called as a witness for defendants, testified that he was a former employee of TradExpo, Inc., and had been employed to clean the offices. Jeanne Worman testified that she was also a former employee of TradExpo, Inc., and had been employed on a part-time basis to perform clerical and bookkeeping work. Brian Johnson testified that he too was a former employee of TradExpo, Inc., and had been employed as a graphic artist. All of these three witnesses testified that they had never observed defendant Amy Kulek doing anything other than talking on the telephone. They all admitted, however, that due to the nature of their work, they could not have observed all of the activities of Amy Kulek in relation to the business. Brian Johnson acknowledged that Kulek met sellers and potential buyers at trade shows.

During defendants' closing argument, defendants moved for entry of judgment in their favor, arguing that (1) plaintiffs' responses to defendants' affirmative defenses were insufficient, and each affirmative defense stood admitted, (2) defendant Amy Kulek should not be held liable because she had not known of the corporation's dissolution, and (3) plaintiffs had failed to prove, in the absence of a contract, that the prices charged were the reasonable market prices for the services provided in the Chicago area at the time the work was performed.

In response, plaintiffs requested that a factual reply to the affirmative defenses be waived because defendants had presented evidence regarding each of the affirmative defenses. Plaintiffs relied upon the evidence presented in opposition to defendants' arguments regarding Amy Kulek's knowledge of the dissolution of the corporation and regarding the propriety of the prices charged defendants.

Counsel for defendants acknowledged that if Amy Kulek was an officer of the corporation, she could be held personally liable for the debt owed to plaintiffs.

Upon consideration of the evidence and the arguments of counsel, the trial court entered judgment in favor of plaintiffs and against both defendants in the amount of $20,945.69, which represented the

damages claimed by plaintiffs less a setoff of $133 which defendants had paid directly to Classic Litho, one of plaintiffs' suppliers.

Defendants initially assert that the trial court erred in admitting into evidence the photocopies of the two pages of plaintiffs' business ledger book which reflected the status of defendants' account.

Plaintiffs contend that the admission of the challenged photocopies was proper under section 8—401 of the Code of Civil Procedure (735 ILCS 5/8—401 (West 1992)). That section provides, however, that where a claim or defense is founded on a book account or any other record or document, photocopies or reproductions of the book or document may be admitted where the book or document has been photographed, microphotographed, microfilmed or otherwise reproduced either in the usual course of business, or pursuant to any statute of this State authorizing the reproduction of public records, papers or documents. See 735 ILCS 5/8—401 (West 1992).

The record before us does not establish that the copies of the ledger pages were prepared "in the usual course of business" as required by the statute. Indeed, the question posed by plaintiffs' counsel, regarding the size and weight of the original ledger book, indicates that the photocopies were prepared specifically for the instant litigation and as a convenience to plaintiffs, who would otherwise have had to transport the original ledger book to court. Thus, contrary to plaintiffs' claim, the trial court's admission of the photocopies of the ledger pages cannot be justified under section 8—401 of the Code of Civil Procedure (735 ILCS 5/8—401 (West 1992)).

•1 Plaintiffs also contend that the court did not err in considering the photocopies of the ledger pages where the information reflected therein was also presented through the testimony of the witnesses and the other exhibits which were properly admitted. Examination of the individual invoices and of the ledger pages establishes that exhibits "A," "C," "F," "G," "I," "K," "L," "Q," "R," "U," and group exhibit "X," which were admitted without objection, contained the same information as the entries reflected in the ledger pages whose admission was challenged by defendants. Thus, the information contained in each of the entries contained in the two ledger pages was also presented through the individual invoices which were admitted without objection by defendants. Accordingly, we hold that the evidence presented in the ledger pages was cumulative, and its admission was not grounds for reversal. See *Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305, 317, 614 N.E.2d 1194.

Defendants next contend that the trial court erred in denying defendants' motion for a finding in their favor based upon the

plaintiffs' failure to respond to the factual allegations contained in defendants' affirmative defenses.

In their answer to the complaint, defendants asserted as affirmative defenses that (1) the parties never agreed on the amounts being sought by the plaintiffs, (2) defendant Drew Axelrod made payments to plaintiffs representing the reasonable market value of the plaintiffs' services and goods provided and owed the plaintiffs nothing else, (3) Amy Kulek only helped Drew Axelrod, her husband, as a secretary, and did not enter into any agreements with the plaintiffs to do work on behalf of TradExpo, Inc., or Drew Axelrod, (4) Amy Kulek did not know that TradExpo, Inc., had been involuntarily dissolved until after the filing of the instant litigation, and she was not personally liable, and (5) Amy Kulek was never an officer of TradExpo, Inc.

It is established that where a defendant introduces evidence to support an affirmative defense, he is deemed to have waived a reply. *In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 1028, 402 N.E.2d 348; *Rosen v. DePorter-Butterworth Tours, Inc.* (1978), 62 Ill. App. 3d 762, 765, 379 N.E.2d 407; *Interstate Printing Co. v. Callahan* (1974), 18 Ill. App. 3d 930, 932, 310 N.E.2d 786.

●2 Examination of the record establishes that defendants presented evidence on each of the affirmative defenses raised in their answer. Consequently, defendants have waived a reply to these defenses, and the trial court acted properly in denying defendants' motion for a finding in their favor based upon the plaintiffs' failure to respond to the factual allegations contained in defendants' affirmative defenses.

Defendants also assert that the trial court erred in entering judgment in favor of plaintiffs where there was no evidence introduced to establish the reasonable market price for the work performed by plaintiffs.

A previous course of dealing may give meaning to or qualify an agreement. (*Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 620, 529 N.E.2d 1138.) The prior course of dealing between the parties may be considered in determining the terms of an oral contract. *Mulliken v. Lewis* (1993), 245 Ill. App. 3d 512, 518, 615 N.E.2d 25.

The record reflects Howard Hammond testified that he had done business with defendants Drew Axelrod and Amy Kulek since March 1991; defendants rarely showed any concern for price; the prices charged defendants were at or slightly below market price; each invoice was delivered at the time the printing services were performed; where work was previously quoted, it was produced at the

quoted price; and at no time after delivery did either defendant express any concern with price. Howard Hammond also testified that the procedure used in pricing the 10 disputed invoices was the same procedure used in pricing the previous 19 invoices which had been paid by defendants. Mary Hammond testified that the prices charged for the color separations were the market prices for such work and that neither defendant had objected to the prices charged. Mary Hammond also stated that although she had offered to quote prices to defendants, they were not interested in the price quotes and requested immediate production. Although Drew Axelrod testified that he had complained about the prices charged by plaintiffs, he acknowledged that he had not put his complaints in writing and could not recall when he had registered these complaints.

●3 The evidence adduced at trial supports the conclusion that the plaintiffs and defendants had been engaged in a course of dealing whereby defendants requested that printing services be performed as soon as possible, without requiring price quotes before the work was done, and paid the invoices sent by plaintiffs when the work was completed. There was no evidence that plaintiffs had failed to complete the work requested or that the work was unsatisfactory. Based upon the record presented, it was not error for the trial court to assess as damages the prices reflected in the invoices issued to defendants by plaintiffs. See *Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738.

Defendants next argue that the trial court erred in finding that defendant Amy Kulek, a/k/a Amy Axelrod, was an officer of Trad-Expo, Inc.

At trial, plaintiffs presented a business card bearing the name of defendant Amy Kulek with the words "Vice President/TradExpo" appearing directly beneath Kulek's name. This business card was admitted into evidence as plaintiffs' exhibit "AB." Plaintiffs also presented three handwritten notes from defendant Kulek in which she requested that plaintiffs perform various services. These notes were admitted as plaintiffs' exhibits "D," "M," and "S."

Defendant Kulek admitted that she had given the business card to Mary Hammond before she had any dealings with Hammond or with H&H Press, Inc. Kulek claimed, however, that the business card had been incorrectly printed, and, if correctly printed, would have stated "Vice President of Sales" rather than "Vice President." Kulek also testified that she did not believe she was an officer of TradExpo, Inc., and that she carefully confined her activities to the telephone, selling, and meeting potential buyers. Kulek stated further that she did not know that the corporation had been dissolved until the

commencement of the instant action. Defendants also presented the testimony of three former employees, Scholl, Worman and Johnson, who testified that they had never observed defendant Amy Kulek doing anything other than talking on the telephone. Yet, these witnesses all admitted that, due to the nature of their work, they could not have observed all of the activities of Amy Kulek in relation to the business. Johnson also acknowledged that Kulek met sellers and potential buyers at trade shows.

In nonjury cases, the trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. (*In re Application of County Treasurer* (1989), 131 Ill. 2d 541, 549, 546 N.E.2d 506.) Where the testimony is conflicting in a bench trial, the findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. (*In re Application of County Treasurer*, 131 Ill. 2d at 549.) On appeal, the reviewing court must take questions of testimonial credibility as resolved in favor of the prevailing party, and must draw from the evidence all reasonable inferences in support of the judgment. *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, 336, 463 N.E.2d 1359.

Corporate officers exercising the functions of their offices under color and claim of authority, even if unlawfully elected, are nevertheless *de facto* officers. (*Levin v. 37th Street Drug & Liquors, Inc.* (1968), 103 Ill. App. 2d 248, 254, 243 N.E.2d 504.) The authority of an officer may be proved by evidence of her having previously exercised certain powers as officer or agent with the approval or recognition of the corporation. (*J.W. O'Brien Corp. v. Alloy Piping, Inc.* (1984), 128 Ill. App. 3d 978, 980, 471 N.E.2d 985.) Where the trial court sits without a jury, its findings of fact will not be disturbed unless they are against the manifest weight of the evidence. *Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 157, 549 N.E.2d 578.

In the case at bar, the evidence as to whether or not Amy Kulek was the vice-president of TradExpo, Inc., was conflicting. On the form documents filed with the Secretary of State, no space was provided for listing the vice-president of the corporation, and those forms did not include the name of the vice-president of TradExpo, Inc. Plaintiffs presented evidence that Kulek held herself out to be the vice-president of TradExpo, Inc., had personally placed certain orders and requests for services from plaintiffs, met sellers and potential buyers at trade shows, and was responsible for selling the services of Trad-Expo, Inc.

¶4 Although Kulek denied that she was the vice-president of the corporation, the trial court was obligated to assess the credibility of the witnesses and to determine the weight to be afforded their testimony. Based upon the testimony and other evidence presented by plaintiffs, the trial court could properly conclude that Kulek had the authority to and, in fact, did assume certain responsibility for the management and operation of TradExpo, Inc. The trial court was free to reject as incredible Kulek's explanation that the business card which listed her as "Vice President" was incorrectly printed. Consequently, we hold that the court's finding of fact that Kulek was an officer of TradExpo, Inc., was not against the manifest weight of the evidence.

Finally, defendants assert that the trial court erred in finding that defendant Amy Kulek, a/k/a Amy Axelrod, was personally liable for the judgment in favor of plaintiffs.

An officer of a corporation dissolved for nonpayment of franchise taxes, who enters into contracts on behalf of the corporation after dissolution, may be held personally liable under those contracts if she knew or, because of her position, should have known of the dissolution. (See 805 ILCS 5/3.20 (West 1992); *Steve's Equipment Service, Inc. v. Riebrandt* (1984), 121 Ill. App. 3d 66, 70, 459 N.E.2d 21; *In re Estate of Plepel* (1983), 115 Ill. App. 3d 803, 806, 450 N.E.2d 1244.) The subsequent reinstatement of a corporation after dissolution does not transform individual liability into corporate liability or create a legal fiction contrary to the true nature of events. *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.* (1991), 222 Ill. App. 3d 413, 420, 584 N.E.2d 142; *Department of Revenue v. Semenek* (1990), 194 Ill. App. 3d 616, 618, 551 N.E.2d 314.

¶5 Although the trial court determined that Amy Kulek was the vice-president of TradExpo, Inc., the record contains no evidence to support the conclusion that Amy Kulek was personally liable for the services provided by plaintiffs. Kulek's uncontroverted testimony established that she was unaware of the dissolution of the corporation until after plaintiffs filed the instant action. The record does not include any documentary or other evidence that Kulek was sent notice of the dissolution by the Secretary of State. Thus, the record does not reflect any evidence that, because of her position, Kulek should have known of the dissolution. Based upon the record before us, we hold that the trial court's finding that Amy Kulek was personally liable for the debts incurred on behalf of the corporation was against the manifest weight of the evidence, and we reverse that portion of the judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

EGAN, P.J., and McNAMARA, J., concur.