**CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al. Plaintiffs,**

v.

**Michael COTTER individually d/b/a American Underground Engineering and American Underground Engineering, Inc., Defendants.**

No. 95 C 2634.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 3, 1996.

240

Collins Parkin Whitfield, Terrance Bryan McGann, Daniel Paul McAnally, Mary Elizabeth Halloran, Janet Lynn Adams, and Todd Abraham Miller, Collins P. Whitfield & Associates, Chicago, IL, for plaintiffs.

Forrest L. Ingram, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiffs, Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Welfare Fund, Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund, and their respective trustees (collectively, "the Funds"), filed suit on May 2, 1995, seeking to examine the books of the defendants, Michael Cotter d/b/a American Underground Engineering and American Underground Engineering, Inc., in order to assess the appropriate ERISA plan contributions. Defendants did not answer or otherwise plead to this complaint and therefore on August 23, 1995, I entered a default judgment against them, ordering them to allow the Funds to examine their books within fourteen days and then make the necessary contributions to the Funds. When defendants did not do so, the Funds filed a Motion for Rule to Show Cause. In response, Mr. Cotter filed this Motion Under Rule 60(b) to Vacate Judgment and Terminate Hearing on Plaintiff's [sic] Motion for Rule to Show Cause.[1] For the reasons stated below, Mr. Cotter's motion is denied in so far as it seeks to avoid complying with the ordered audit.

1. "For good cause shown the court may set aside an entry of default and, if a judgment by default

### Background

American Underground Engineering, Inc. ("American, Inc.") was incorporated on May 15, 1979 with Mr. Cotter as corporate president. On April 6, 1989, Mr. Cotter signed, on behalf of American, Inc., a Collective Bargaining Agreement ("the CBA") with the Chicago and Northeast Illinois District Council of Carpenters. Pursuant to the CBA, American, Inc. agreed to make contributions to the plaintiffs, multiemployer benefit funds, based upon the number of hours worked by bargaining unit employees. American, Inc. also agreed to submit reports to the Funds and open its records to the Funds as necessary, so that the Funds could assess the appropriate contributions.

On November 3, 1989, American, Inc. filed a Chapter 11 bankruptcy petition. On January 7, 1992, American Inc.'s Plan of Reorganization ("the Plan") was confirmed by the bankruptcy court. In December of 1993, the Funds filed suit seeking to compel American, Inc. to comply with the CBA and submit to an audit of its books and records for the period of May, 1991 to the present. Because the time period specified in that complaint included time prior to the Plan confirmation, the Funds voluntarily dismissed their suit upon learning of American, Inc.'s bankruptcy. The Funds then requested Mr. Cotter to voluntarily submit to an audit only for the time period from the plan confirmation to the present. When he did not do so, the Funds filed this suit, seeking relief under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Taft–Hartley Act, 29 U.S.C. § 185.

### Analysis

■ To vacate a default judgment under Rule 60(b), the defendants must show (1) good cause for its default, (2) quick action to correct it, and (3) a meritorious defense to the action. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir.1994).

has been entered, may likewise set it aside in

Mr. Cotter[2] makes several arguments in order to establish a meritorious defense. Each will be discussed in turn.

### A. Statute of Limitations & Jurisdiction

■ Mr. Cotter contends that this suit is barred by the statute of limitations. ERISA does not contain a statute of limitations for benefit actions filed under Section 502, and therefore courts borrow the most analogous state statute of limitations. See Jenkins v. Local 705 Intern. Broth. of Teamsters, 713 F.2d 247, 251 (7th Cir.1983). The Seventh Circuit mandates the use of the Illinois statute of limitations for written contracts when fund trustees seek delinquent employer contributions owed to a multiemployer benefit fund. See Central States, Southeast and Southwest Areas Pension Fund v. Jordan, 873 F.2d 149 (7th Cir.1989). The statute of limitations in Illinois for a breach of a written contract is ten years. 735 ILCS 5/13–206. This suit is therefore timely.[3]

■ Mr. Cotter also argues that this suit should have been brought before the National Labor Relations Board ("NLRB"), and I therefore have no jurisdiction over it. In support of this argument, he cites Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988). In Laborers, the defendant employer stopped making contributions to the plaintiff pension funds after the collective bargaining agreement expired and the employer had reached impasse with the union. The pension funds brought suit, alleging that the employer's decision to discontinue its contributions was a unilateral change in the terms and conditions of employment and therefore constituted a breach of its duty to bargain in good faith under section 8(a)(5) of the National Labor Relations Act ("NLRA"). Id. at 542, 108 S.Ct. at 830. The Court held that only the NLRB, and not the district court, had jurisdiction to hear the suit. Id. at 553, 108 S.Ct. at 838.

In reaching this conclusion, the Court held that Section 502 applies only to the collection of already "promised contributions." It does "not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA." Id. at 549, 108 S.Ct. at 836 (emphasis added). In this case, the Funds seek contributions under the terms of an existing collective bargaining agreement. The Funds, therefore, need not go to the NLRB for relief. See, e.g., Scarfi v. Bright Star Industries, Inc., 779 F.Supp. 687, 689 (E.D.N.Y.1992) (exercising jurisdiction over a suit for contributions pursuant to a "still-effective contract").

### B. The Effect of the Bankruptcy

■ Mr. Cotter argues that this action is barred by the doctrine of res judicata. He claims that the bankruptcy court already rejected a claim for contribution brought by the Funds and therefore this suit is barred. The Funds correctly note, however, that the present action concerns only the time period extending from the Plan confirmation to the present. Because there is no "identity of the cause of action," res judicata does not apply. Prochotsky v. Baker & McKenzie, 966 F.2d 333, 334 (7th Cir.1992).[4]

---

accordance with Rule 60(b)." FED.RULES CIV.PRO. 55(c).

2. For simplicity, I refer to Mr. Cotter alone as the defendant. The issue of Mr. Cotter's liability for any judgment against American, Inc. is discussed later in this opinion.

3. Mr. Cotter cites DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) for the proposition that I must apply the 6–month statute of limitations found in the National Labor Relations Act, rather than looking to state law for the appropriate statute of limitations. DelCostello, however, involved a "hybrid" action in which an employee sued both his employer for breach of a collective bargaining agreement and his union for breaching its duty of fair representation. It does not apply to a "straightforward" section 301 suit such as this one. See International Union of Elevator Constructors v. Home Elevator Co., 798 F.2d 222 (7th Cir.1986) (distinguishing DelCostello and applying a state statute of limitations to a suit by a union against an employer for failing to pay the wage rate mandated by the collective bargaining agreement).

4. For the same reason, this suit is not barred by the Plan injunction, which only enjoins suits "to collect, assess, or recover a claim against the Debtor that arose before the Confirmation Date."

Mr. Cotter next contends that the Funds have no contribution claim for any time after the confirmation of the Plan because the CBA was rejected in the bankruptcy proceeding. As the Funds point out, however, American, Inc. never adequately rejected the CBA.

Congress has enacted a specific provision of the Bankruptcy Code to govern collective bargaining agreements. Under this provision, a debtor "may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." 11 U.S.C. § 1113(a) (1993). It sets forth specific procedural requirements to be followed by a debtor wishing to reject a collective bargaining agreement and precludes employers from unilaterally altering collective bargaining agreements. 11 U.S.C. § 1113(f) ("No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.").[5] This section provides the exclusive means by which to reject a collective bargaining agreement. *See, e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989–91 (2d Cir.1990) ("Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113."), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). The parties do not dispute that American, Inc. did not follow the appropriate procedure under Section 1113.

Mr. Cotter contends, however, that American, Inc. rejected the CBA when the Plan was confirmed anyway. He argues that the Funds should have objected to American Inc.'s failure to follow the appropriate procedure when the creditors voted on the Plan. According to Mr. Cotter, the Funds have waived their right to raise this argument by failing to do so at the appropriate time. The Funds argue that American, Inc. simply never rejected the CBA and therefore they had no obligation to raise their objection earlier, when they had no real objection to make.

To support his proposition that American, Inc. rejected the CBA in bankruptcy, Mr. Cotter makes several arguments. First, Mr. Cotter claims that the paragraph of the confirmed plan rejecting all executory contracts not explicitly assumed covers the CBA.[6] According to Mr. Cotter, American Inc. rejected all executory contracts under Section 365 through this Plan provision, including the CBA.[7] Section 1113 makes clear, however, that collective bargaining agreements cannot be rejected through Section 365. *See, e.g., In re Alabama Symphony Assoc.,* 155 B.R. 556, 571 (Bankr.N.D.Ala. 1993) ("[Section 1113] has been interpreted to mean that no other provision of the Code may be used to allow a debtor to bypass the requirements of Section 1113. In other words, a CBA cannot be rejected under Section 365.").

Second, Mr. Cotter notes that American Inc.'s bankruptcy disclosure statement notified all creditors that American, Inc. no longer had any employees except Mr. Cotter himself. According to Mr. Cotter, this disclosure gave the Funds notice that American, Inc. did not intend to assume the CBA. Mr. Cotter does not explain, however, how this "notice" substitutes for the clear requirements of Section 1113 for rejecting a CBA. Courts have held that Section 1113 creates no less than nine separate factors to be met before the rejection will be completed. *See, e.g., Alabama Symphony, supra,* 155 B.R. at 573. American, Inc.'s disclosure that it no

---

**5.** Ordinarily, debtors may reject executory contracts without consent of the other party to the contract. *See* 11 U.S.C. § 365.

**6.** This paragraph states: "The Court shall retain jurisdiction after the confirmation of the Plan to consider applications for the assumption or rejection of any executory contracts or unexpired leases of the Debtor that have not been previously assumed or rejected under Section 365 of the Bankruptcy Code.... Unless the Debtor presents to the Court an application to assume an executory contract or unexpired lease within thirty days after the Effective Date, it shall be deemed for all purposes to have been rejected."

**7.** 11 U.S.C. § 365(a) provides: "[T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

longer had any union employees is insufficient.[8]

■ Finally, Mr. Cotter argues that if American, Inc. had assumed the collective bargaining agreement, the Plan would have had to provide for the payment of claims pursuant to the CBA according to the Bankruptcy Code's priority scheme. *See In re Moline*, 144 B.R. 75, 78 (Bankr.N.D.Ill.1992) ("Unless and until the debtor rejects the collective bargaining agreement, the debtor must abide by its terms. If the debtor never rejects the collective bargaining agreement and thus assumes the agreement by inaction, [priority is governed by section 507]."). Although I find the Plan's silence on the CBA troubling, I do not conclude from it that the CBA was adequately rejected. Section 1113 creates strict requirements for debtors to follow when rejecting a collective bargaining agreement. It makes clear Congressional intent to put the burden on the debtor to affirmatively resolve a collective bargaining agreement. Although the Funds should perhaps have noticed American, Inc.'s error earlier, they had no duty to come forward. American, Inc. is therefore still bound to the terms of the collective bargaining agreement.

## C. *Mr. Cotter as a Named Defendant*

Mr. Cotter claims that he is not a proper defendant in this case because he never individually, nor doing business as American Underground Engineering ("American"), entered into a collective bargaining agreement with the Funds. Mr. Cotter, however, may still be liable for plan contributions under several different theories. First, the Funds contend that Mr. Cotter, as the former president of American, Inc., may be liable for the contributions that American, Inc. owes the Funds.

Mr. Cotter argues that he cannot be held liable for any delinquent contributions of American, Inc., because it was dissolved in October of 1993 and he did not have notice of its dissolution. In support of this argument he cites *H & H Press, Inc. v. Axelrod*, 265 Ill.App.3d 670, 638 N.E.2d 333, 202 Ill.Dec. 687 (1st Dist.1994). In *H & H Press*, the court held that one of the defendants, although an officer of the debtor corporation, could not be held personally liable for the corporation's debt. 202 Ill.Dec. at 694, 638 N.E.2d at 340. In making this determination, the court noted that an officer may be held liable "if she knew or, because of her position, should have known of the dissolution." *Id.* The court did not find the defendant in *H & H Press* liable because there was no evidence in the record to show that she had been sent notice of the dissolution and therefore no evidence to show that she should have known about it. She was not listed as an officer on the form documents filed with the Secretary of State and was only found to be a *de facto* officer based on conflicting evidence regarding her role in the corporation.

■ Mr. Cotter provides no evidence regarding the dissolution of American, Inc. He simply states in his memorandum of law that it did dissolve in October of 1993. He then states in an improperly notarized affidavit that his previous attorney "did not inform [him] of the dissolution of AUE Inc. [He] only learned of the dissolution through [his] current attorney." [9] This affidavit is not sufficient for me to set aside the default judgment. Even assuming American, Inc. was dissolved in 1993, Mr. Cotter has not explained why, as President of American, Inc., he should not be charged with knowledge of its dissolution. In *H & H Press*, the court found that the defendant was not in a position necessarily to have knowledge because she was only found to be a *de facto* officer

8. Additionally, the CBA itself requires a signatory employer to send a written letter of termination to the Union. Mr. Cotter did not comply with this requirement.

9. 5 ILCS 312/6–103(a) declares that "[a] notarial act must be evidenced by a certificate signed and dated by the notary public." The affidavit submitted by Mr. Cotter was neither signed nor

dated. It did not state that Mr. Cotter made his declaration under penalty of perjury and I therefore need not consider it. *See Pfeil v. Rogers*, 757 F.2d 850, 858–59 (7th Cir.1985) (holding court must accept an improperly notarized affidavit if the affiant makes his statement under penalty of perjury), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

based on her actions. Mr. Cotter makes no similar argument here.

The Funds also argue that Mr. Cotter is liable for plan contributions because he is operating a sole proprietorship under the name of American. The Funds argue that he should therefore be liable for American, Inc.'s delinquent contributions, as its successor corporation. The Funds also argue that Mr. Cotter is still bound to the CBA and thus still incurring contribution obligations. The Funds do not really distinguish these two theories of liability, but they are distinct.

■ As an initial matter, I note that Mr. Cotter first responds by declaring that he never operated American as a sole proprietorship. What type of work was performed by Mr. Cotter or American is a question of fact, which the Funds are entitled to prove by conducting their audit.[10]

The Funds contend that as the successor of American, Inc., Mr. Cotter d/b/a American is liable for American, Inc.'s delinquent contributions. Under this theory, Mr. Cotter would at most be liable for contributions for hours worked by union employees from the date of plan confirmation until the date of American, Inc.'s dissolution.

■ Pension liability may be transferred to a successor corporation. *See Upholsterers' International Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir.1990). To do so requires "sufficient indicia of continuity between the two companies." *Id.* at 1329. Based on the record before me, however, I cannot decide whether Mr. Cotter d/b/a American has the necessary nexus with American, Inc. to be held liable for its contributions. The Funds are entitled to conduct their audit in order to obtain the necessary information to prove this theory.

■ The Funds also contend that Mr. Cotter d/b/a American continues to be bound to the CBA and is therefore responsible for contributions for union workers who worked

for him, even after American, Inc. was dissolved. Although ordinarily a successor company is not bound to a collective bargaining agreement signed by its predecessor, an " 'alter ego' of the predecessor, where it is 'merely a disguised continuance of the old employer,' " it will be so bound. *Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974) (quoting *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942)).

> Such cases involve a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its ownership or management. In these circumstances, the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor.

*Id.*

■ Whether the alleged sole proprietorship American Underground Engineering is the alter ego of American Underground Engineering, Inc. is a question of fact. *Chicago District Council of Carpenters Pension Fund v. T.M.R. Construction, Inc.*, No. 84 C 6074, 1985 WL 1230 (N.D.Ill. May 2, 1985). In determining whether a successor corporation is the alter ego of its predecessor, courts consider several factors: whether they have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. *Id.* Although courts may consider whether the change was motivated by anti-union sentiment, it is not necessary to find this motivation in order to conclude that the successor is an alter ego. *See Masonry Institute of Cook County Welfare Fund v. Andrist*, No. 87 C 4464, 1988 WL 37754 (N.D.Ill. April 19, 1988).

■ In this case, there is an insufficient record on which to make a finding of alter

---

10. Mr. Cotter offers his own affidavit and one from his accountant to show that he never operated as a sole proprietorship. These affidavits are not properly notarized and I therefore need not consider them. *See supra.* More importantly, they contain legal conclusions regarding whether Mr. Cotter is bound by the collective bargaining agreement. They do not take away the Funds' right to conduct discovery (or an audit) to gather the factual evidence to prove whether Mr. Cotter operated American as a sole proprietorship.

ego status. Mr. Cotter is not entitled to judgment in his favor on this ground. The Funds may still conduct their audit in order to assess the appropriate plan contributions.

### D. *Sub–Contracting Work*

Mr. Cotter declares that neither he nor American, Inc. have used any union employees since American, Inc.'s Plan was confirmed. He argues, therefore, that the Funds are entitled to no contributions and should not be allowed to examine his books. The Funds insist that they believe that Mr. Cotter has been subcontracting work to union employees and that they are entitled to conduct their audit in order to determine whether Mr. Cotter is liable for contributions for them.

If a collective bargaining agreement unambiguously requires employers to make contributions for hours worked by subcontracted union employees, that provision is enforceable. *Illinois Conference of Teamsters and Employers Welfare v. Mrowicki*, 44 F.3d 451, 458–59 (7th Cir.1993). On the evidence presently before me, I cannot determine whether Mr. Cotter should be held liable for contributions on any employees. The Funds have not yet pointed to any specific employees for whom Mr. Cotter should make contributions. They cannot obtain this information without conducting their audit. Mr. Cotter has not convinced me that the Funds are not at least entitled to conduct an audit to determine whether any union employees were employed through a subcontracting agreement.

### *Conclusion*

For the reasons stated above, the Funds are entitled to conduct their audit of Mr. Cotter's books. Should they wish to obtain any contributions from Mr. Cotter, I will decide then whether Mr. Cotter can be held liable. Mr. Cotter's motion is granted in part and denied in part in accordance with this opinion.